NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Jose Enrique Perez Mejia,

*Petitioner,*

v.

Pamela Bondi, *et al.,*

*Respondents.*

Civil Action No. 26-1592

**MEMORANDUM OPINION
AND ORDER**

March 16, 2026

**THIS MATTER** comes before the Court on the Petition for a Writ of Habeas Corpus filed by Petitioner Jose Enrique Perez Mejia pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) Petitioner challenges the legality of his continued immigration detention following a bond hearing conducted pursuant to this Court's prior order. Having carefully reviewed the petition, the parties' subsequent submissions, and the limited record of the bond proceedings, the Court concludes that the February 27, 2026 bond hearing did not comport with the requirements of due process or the individualized custody determination required under 8 U.S.C. § 1226(a). The Petition (Dkt. No. 1) is therefore **GRANTED** and Petitioner shall be immediately released.

I.    **BACKGROUND**

Petitioner filed the instant habeas petition on February 18, 2026, challenging his immigration detention and asserting that he had not been provided a constitutionally adequate opportunity to obtain release on bond. (Dkt. No. 1.) Petitioner alleges that he has lived in the United States for five years and five months, has no criminal history, and resides in New Jersey. (*Id.* ¶¶ 16-17, 23; *see also* Dkt. No. 10 at 2.)

On February 19, 2026, this Court issued a text order determining that Petitioner's detention

was governed by 8 U.S.C. § 1226(a) rather than § 1225 and directing Respondents to provide Petitioner with an individualized bond hearing before an immigration judge. (Dkt. No. 3.) The Court specifically ordered that the immigration judge determine whether Petitioner presents either a danger to the community or a risk of flight. (*Id.*) The Court further required Respondents to notify the Court of the outcome of that hearing within three days. (*Id.*)

Respondents later requested a brief extension, explaining that a previously scheduled hearing did not proceed due to scheduling constraints in the immigration court docket. (Dkt. No. 5.) The Court granted the request and extended the deadline by one day. (Dkt. No. 6.)

On February 27, 2026, Immigration Judge Ramin Rastegar conducted a bond hearing and denied Petitioner's request for release. (Dkt. No. 7.) The immigration judge's written order states only that, "The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered: Denied because Respondent is a flight risk." (Dkt. No. 7-1.)

Petitioner subsequently filed a letter advising the Court that the hearing did not comport with the individualized framework required by § 1226(a). (Dkt. No. 8.) In response, this Court ordered the parties to "submit briefing, with supporting documentation from the bond proceedings as necessary, addressing whether the bond hearing satisfied the requirements of fundamental fairness." (Dkt. No. 9.)

Respondents filed a letter submission asserting that the Court lacks jurisdiction to review the immigration judge's bond determination and arguing that Petitioner merely disagrees with the immigration judge's weighing of the evidence. (Dkt. No. 10.) Respondents did not file supporting documentation from the bond proceedings with their submission. (*See id.*) Petitioner responded that the hearing was constitutionally deficient because the immigration judge relied on generalized

2

assumptions rather than individualized evidence demonstrating that Petitioner posed a flight risk. (Dkt. No. 11.)

Petitioner represents that counsel contacted the Elizabeth Immigration Court on or about March 6, 2026 to request access to the Digital Audio Recording of the bond proceedings after it did not appear in the Executive Office for Immigration Review's online filing system. (*Id.* at 1.) Court staff advised that the recording "should have" been accessible and instructed counsel to submit a transcript request by email, but later responded that only the Immigration Judge's written order was available. (*Id.*)

On March 13, 2026, Petitioner's counsel filed a letter to notify the Court that Immigration and Customs Enforcement officers approached Petitioner in detention and encouraged him to consent to voluntary departure while this habeas petition remained pending. (Dkt. No. 12.)

On March 16, 2026, Petitioner filed a supplemental letter advising the Court that, during the pendency of this matter, the Immigration Judge granted Respondents' motion to pretermit Petitioner's asylum application prior to the expiration of the applicable response period, thereby foreclosing a full merits hearing. (Dkt. No. 13.) Petitioner further represents that, in light of that ruling, he requested and was granted voluntary departure, with a departure deadline of April 15, 2026, and renews his request for immediate release pending that date. (*Id.* at 2.)

## II.   **JURISDICTION**

Respondents contend that this Court lacks jurisdiction to review the immigration judge's denial of bond because 8 U.S.C. § 1226(e) bars judicial review of discretionary custody determinations. (Dkt. No. 10 at 2.)

That argument misapprehends the scope of habeas review in immigration detention cases. Although § 1226(e) limits review of discretionary bond determinations made by

immigration authorities, the statute does not preclude federal courts from reviewing constitutional claims or questions of law arising from immigration detention. The Supreme Court and the Court of Appeals for the Third Circuit have consistently recognized that federal courts retain habeas jurisdiction to ensure that immigration detention comports with the requirements of the Constitution. *See Demore v. Kim*, 538 U.S. 510, 517 (2003) (recognizing that habeas corpus remains available to challenge the legality of immigration detention); *Sylvain v. Att'y Gen.*, 714 F.3d 150, 155 (3d Cir. 2013) (holding that federal courts retain jurisdiction under § 2241 to review constitutional challenges to immigration detention).

More specifically, the Third Circuit has emphasized that while courts may not reweigh the immigration judge's factual determinations in a bond decision, they may review whether the bond proceeding itself satisfied the requirements of fundamental fairness. *See Ghanem v. Warden Essex Cnty. Corr. Facility*, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) (explaining that habeas review in this context is limited to determining whether the bond hearing was "fundamentally fair").

In a fundamentally fair bond hearing, due process has three essential elements. The noncitizen "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his interests." *Ghanem*, 2022 WL 574624, at *2.

Petitioner's challenge falls squarely within this framework. He does not simply disagree with the immigration judge's ultimate determination that he posed a flight risk. Rather, he asserts that the proceeding lacked an adequate evidentiary record, relied on generalized assumptions rather than individualized findings, and failed to provide the meaningful custody determination required by due process. (Dkt. No. 11.)

4

Accordingly, while this Court may not substitute its own judgment for that of the immigration judge or reweigh the evidence presented at the bond hearing, it retains authority to determine whether the procedures employed comported with the requirements of due process and whether the resulting custody determination reflects the individualized assessment required by governing law. The Court therefore turns to the constitutional framework governing immigration detention and the adequacy of the bond proceedings conducted in this case.

## III.   ANALYSIS

### a.  Due Process Requires an Individualized Custody Determination

The Due Process Clause imposes meaningful limitations on the Government's authority to detain noncitizens during removal proceedings. Although immigration detention is civil rather than criminal in nature, the Supreme Court and the Third Circuit have repeatedly recognized that such detention implicates significant liberty interests. *See Zadvydas v. Davis*, 533 U.S. 678, 679 (2001) (recognizing that "[f]reedom from imprisonment lies at the heart of the liberty protected by the Due Process Clause").

Within this Circuit, the constitutional framework governing immigration detention has been developed through a series of decisions emphasizing the necessity of individualized custody determinations. In *Diop v. ICE/Homeland Security*, the Third Circuit held that when immigration detention becomes unreasonable, "the Due Process Clause demands a hearing" at which the Government must justify continued detention. 656 F.3d 221, 233 (3d Cir. 2011) (holding that prolonged detention without an individualized inquiry into necessity violates due process). The court elaborated on this principle in *Chavez-Alvarez v. Warden York County Prison*, explaining that prolonged detention without an individualized custody determination cannot continue indefinitely and becomes constitutionally suspect once it extends beyond the period contemplated

in *Demore v. Kim.* 783 F.3d 469, 474–78 (3d Cir. 2015) (holding that detention approaching or exceeding one year without a meaningful bond hearing raises serious constitutional concerns).

Although those cases involved mandatory detention under § 1226(c), their constitutional reasoning remains instructive. As the Third Circuit later clarified, the core principle underlying those decisions is that immigration detention must remain reasonably related to its regulatory purposes—namely ensuring appearance at proceedings and protecting the community. *See German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020) (reaffirming that due process permits noncitizens to challenge the constitutionality of their detention and holding that detention becomes unconstitutional when it grows unreasonable).

Similarly, in *Guerrero-Sanchez v. Warden York County Prison*, the Third Circuit emphasized that when detention becomes prolonged, due process requires a bond hearing at which the Government bears the burden of demonstrating that continued detention is justified by risk of flight or danger to the community. 905 F.3d 208, 222 (3d Cir. 2018) (holding that prolonged immigration detention requires an individualized bond hearing with the Government bearing the burden of proof).

These decisions collectively reflect the Third Circuit's consistent recognition that immigration detention must be supported by a meaningful, individualized determination that continued confinement is necessary.

### b. The Record of the Bond Hearing Is Inadequate

Measured against these principles, the bond hearing conducted in this case fails to satisfy the requirements of due process.

Respondents acknowledge that the hearing was not recorded and that no audio recording or transcript exists. (Dkt. No. 10 at 1.) The only documentation before this Court is a brief written

6

order stating that the request for bond was denied because Petitioner is a "flight risk." (Dkt. No. 7-1.) The absence of any meaningful record is incompatible with the fundamental fairness requirements articulated by the Third Circuit. A bond determination must be based on a record produced before the decisionmaker and disclosed to the detainee. *See Ghanem*, 2022 WL 574624, at *2. Here, the immigration judge's written order contains no discussion of the evidence presented, no explanation of the reasoning underlying the decision, and no analysis of the relevant custody factors. (Dkt. No. 7-1.)

The absence of any recording, transcript or reasoned explanation of the decision prevents meaningful review of whether the immigration judge applied the proper legal standard or meaningfully considered the evidence presented. A process that produces no reviewable record is fundamentally incompatible with the procedural protections required by due process. Without such information, the Court cannot determine whether the decision rested on permissible considerations or on generalized assumptions inconsistent with the individualized framework required by § 1226(a).

### c. The Flight-Risk Determination Does Not Reflect an Individualized Assessment

Even on the limited record available, the rationale described by the parties raises significant constitutional concerns.

Petitioner asserts that the immigration judge relied primarily on Petitioner's entry into the United States without inspection and a speculative assessment that Petitioner's asylum claim was unlikely to succeed. (Dkt. No. 11 at 2-3.) Such reasoning does not satisfy the individualized analysis required by the Due Process Clause.

Immigration detention is justified only insofar as it serves the regulatory purposes of ensuring attendance at removal proceedings and protecting the community. *See Zadvydas*, 533

7

U.S. at 690 (explaining that civil immigration detention must bear a reasonable relationship to its regulatory purpose). Reliance on generalized assumptions regarding manner of entry—without meaningful consideration of the individual's circumstances—undermines that requirement. If entry without inspection alone were sufficient to establish flight risk, the discretionary bond framework established by § 1226(a) would effectively be rendered meaningless.

### d. The Immigration Judge Failed to Meaningfully Consider Evidence Favoring Release

The record before the Court also reflects substantial evidence weighing in favor of release. Respondents acknowledge that Petitioner presented evidence demonstrating that he has no criminal history; has lived in the United States for more than six years; has maintained consistent employment for approximately four years; has paid taxes during that time; and resides with family members in New Jersey. (Dkt. No. 10 at 2; *see also* Dkt. No. 10-1.) Despite the existence of this evidence, the immigration judge's order contains no indication that these factors were meaningfully considered. (Dkt. No. 7-1.) The absence of any explanation or analysis further supports Petitioner's contention that the proceeding lacked the individualized custody determination required by due process.

### e. The Immigration Judge Did Not Consider Conditions of Release

Finally, the governing regulations expressly contemplate release on bond or conditional supervision where such measures adequately mitigate flight risk. *See* 8 C.F.R. § 1236.1(c)(8) (authorizing release on bond where the detainee does not pose a danger to the community or risk of flight). Yet the immigration judge's order does not reflect any consideration of whether conditions short of detention—such as reporting requirements or other supervisory measures— could reasonably ensure Petitioner's appearance. (Dkt. No. 7-1.)

This omission further underscores the lack of the individualized custody analysis required

8

by the Due Process Clause.

### f. Remedy

Having determined that the February 27, 2026 bond hearing did not satisfy the requirements of due process, the Court must determine the appropriate remedy.

In some immigration detention cases, courts remedy a constitutionally deficient bond proceeding by ordering a new hearing. *See, e.g., Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 212 (3d Cir. 2018) (directing that where an immigration bond hearing is constitutionally deficient—because it was not individualized and failed to meaningfully consider the detainee's evidence—the appropriate remedy is to require a new, legally sufficient bond hearing at which the Government must carry its burden to establish flight risk or danger). However, habeas corpus is an equitable remedy, and district courts retain broad authority to fashion relief appropriate to the circumstances of the case. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001) (recognizing that the writ of habeas corpus is an equitable remedy designed to protect individuals from unlawful restraint). Where the detention process has already failed to produce a constitutionally adequate custody determination, courts may order immediate release rather than directing yet another hearing that risks prolonging unlawful detention. *See, e.g., Rodriguez v. Rokosky*, No. 25-17419, 2025 WL 3485628, at *3 (D.N.J. Dec. 3, 2025); *Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496 (D.N.J. Sept. 26, 2025).

The Third Circuit has emphasized that immigration detention must remain reasonably related to its regulatory purpose and must be supported by a meaningful, individualized determination that continued confinement is necessary. *See German Santos v. Warden Pike County Correctional Facility*, 965 F.3d 203, 210–11 (3d Cir. 2020) (holding that immigration detention becomes unconstitutional when it grows unreasonable in relation to its regulatory purpose). Here,

several factors weigh strongly in favor of immediate release.

First, Respondents were already afforded the opportunity to provide Petitioner with a constitutionally adequate bond hearing pursuant to this Court's prior order. (Dkt. No. 3.) The hearing that followed failed to produce a constitutionally adequate record or explanation of the decision reached. Under these circumstances, the Court declines to prolong Petitioner's detention by ordering yet another proceeding that should have already occurred in a constitutionally sufficient manner.

Second, the existing record contains substantial evidence indicating that Petitioner does not present a danger to the community and does not pose a significant risk of flight. Respondents acknowledge that Petitioner has no criminal history, has lived in the United States for several years, has maintained steady employment, and resides with family members in New Jersey. (Dkt. No. 10 at 2; *see also* Dkt. No. 10-1.)

Third, the immigration judge's order contains no indication that alternatives to detention were meaningfully considered. (Dkt. No. 7-1.) As the Supreme Court has emphasized, civil immigration detention is constitutionally permissible only insofar as it serves its regulatory purpose. *Zadvydas*, 533 U.S. at 690.

Moreover, Petitioner's pending asylum claim was pretermitted by the Immigration Judge, and he has been granted voluntary departure (Dkt. No. 13), which underscores the equities favoring immediate release rather than prolonging detention through yet another bond hearing. Habeas corpus exists precisely to prevent the continued restraint of liberty where lawful justification for detention has not been demonstrated. The above procedural deficiencies, including the pretermission of Petitioner's asylum application and the lack of access to a full merits hearing, further highlight the inadequacy of the processes restraining Petitioner's liberty.

10

### g.  Conclusion and Order

Accordingly, the record before the Court does not demonstrate that Petitioner's continued detention rests on a reasoned, individualized determination supported by evidence in the record. Because the bond proceedings failed to provide the fundamentally fair custody determination required by the Due Process Clause and the statutory framework governing detention under 8 U.S.C. § 1226(a), Petitioner's continued detention cannot stand.

IT IS on this _17th_ day of March 2026,

ORDERED that Petitioner's § 2241 Petition (Dkt. No. 1) is GRANTED; and it is further

ORDERED that Respondents shall on this date IMMEDIATELY RELEASE Petitioner subject to reasonable conditions of supervision imposed by the Department of Homeland Security; and it is further

ORDERED that Respondents shall file a letter on the docket confirming the date and time of Petitioner's release; and it is further

ORDERED that Respondents are PERMANENTLY ENJOINED from rearresting or otherwise detaining Petitioner under § 1225, which this Court has found inapplicable to him; and it is further

ORDERED that, should Respondents later detain Petitioner, this Court retains jurisdiction over the matter and Petitioner may move to promptly reopen this case, at which time the Court may take further action as appropriate; and it is further

ORDERED that the Clerk of the Court shall CLOSE this case.

KAREN M. WILLIAMS
UNITED STATES DISTRICT JUDGE

11